IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **YOUNG CONTRACTING SE/, INC.,** | |
| **Plaintiff,** | |
| v. | **CIVIL ACTION** |
| **HARCO NATIONAL INSURANCE CO.,** | **FILE NO. _____** |
| **Defendant.** | |

## COMPLAINT

Plaintiff, Young Contracting/SE, Inc., ("Young") through its undersigned counsel of record, hereby files this Complaint against Defendant Harco National Insurance Co. ("Surety"). and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Young is a corporation duly incorporated under the laws of the State of Georgia with its principal place of business in Sandy Springs, Fulton County, Georgia. Young is qualified to do business in Georgia.

2. Defendant Harco is a corporation duly incorporated under the laws of the State of Illinois with its principal place of business in Raleigh, North Carolina. Defendant Harco is registered to do business in Georgia and is subject to the

jurisdiction of this Court. Harco may be served with a Summons and a copy of this Complaint in this jurisdiction through its registered agent for service of process in Georgia, CT Corporation System, 289 South Culver Street, Lawrenceville, Georgia 30046.  Harco is a compensated surety.

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, diversity of citizenship, in that the parties are completely diverse and the claims made in this lawsuit seek recovery of more than $75,000.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred within this District.

## BACKGROUND FACTS

5. Young entered into a contract (the "Prime Contract") with the Branch Ashwood Associates, L.P. ("Owner") to construct a retail shopping center located at 500 Ashwood Parkway, Atlanta, GA 30338 including a Publix grocery store and several other retail buildings and improvements (the "Project").

6. Young entered into a subcontract with Fritz Contractors, LLC on July 24, 2020 for Earthwork, Demolition, Erosion Control, Storm Drainage, Site Water and Site Sanitary Sewer as more particularly described in the Subcontract which is

attached hereto as **Exhibit 1** and incorporated herein. The Prime Contract is expressly incorporated into the Subcontract.

7. Fritz, as Principal, and Harco, as Surety, caused a Payment Bond and a Performance Bond to be issued for the benefit of Young and the Project. A copy of the Payment Bond is attached hereto as **Exhibit 2** and incorporated herein. A copy of the Performance Bond is attached hereto as **Exhibit 3** and incorporated herein.

8. The Payment Bond incorporates the Subcontract into the Payment bond.

9. The Performance Bond incorporates Subcontract and binds Harco to the Subcontract subject to the terms of the Performance Bond.

10. Paragraph 8 of Exhibit B to the Subcontract provides that "All Sitework is included as unclassified. Subcontractor acknowledges inclusion of all work necessary to prepare the site in accordance with the Contract Documents and Geotechnical recommendations and agrees to meet the schedule and deadline completion dates regardless of the site conditions encountered."

11. The word "unclassified" as used in the paragraph above and as used in the Subcontract means that any rock, unsuitable soils or other unexpected material

encountered by Fritz would be remedied by Fritz at no additional charge to Young or the Owner.

12. Paragraph 9 of Exhibit B to the Subcontract provides that it is Fritz' responsibility to ensure the proper compaction of all earth material for mass grading, backfill and trench work.

13. Paragraph 9 of Exhibit B to the Subcontract provides that it is Fritz responsibility to ensure that its work is tested and meets all requirements of the specifications.

14. Paragraph 2 of the Subcontract requires Fritz to perform all work in a good and workmanlike manner.

15. Paragraph 2 of the Subcontract requires Fritz to furnish and pay for all materials, equipment, tools and labor needed to perform the work of the Subcontract.

16. Paragraph 2 of the Subcontract requires Fritz to perform all remedial work required to bring its work into compliance with the Contract Documents.

17. Paragraph 4 of the Subcontract requires Fritz to finish its work within the Project schedule.

18. Paragraph 5 of the Subcontract requires Fritz to provide adequate numbers of trained labor and supervision to perform its work.

19.     Paragraph 8 of the Subcontract requires that Fritz keep the Project free from all liens.

20.     Paragraph 10 of the Subcontract requires that Fritz remedy any event of default within 48 hours of notice the event or events.

21.     Paragraph 11 of the Subcontract require that Fritz defend, indemnify and hold Young harmless from all "obligations and liabilities" that arise or are in anyway connected with the Project.

22.     Fritz received multiple notices of default from Young on the Project.

23.     Fritz and Harco received notices of default and were given opportunities to cure including:

     a.     Wednesday, September 23, 2020 Fritz received notice of default for failure to support change requests, failure to timely perform de-mucking and pond filling, fill operations, sanitary sewer work and installation of precast box culverts.

     b.     Tuesday, October 13, 2020 Fritz received notice of default for failure to completely install shot rock, failure to complete the Publix building pad, failure to complete sanitary sewer rerouting and the need for constant and competent supervision.

c. Wednesday, December 16, 2020 Fritz received notice of default failure to timely place stockpiled soils causing additional moisture in the stockpile, failure to timely complete building pads for Buildings C & D.

d. Friday, October 18, 2020 Fritz received notice of default and withholding of payments as provided in the Subcontract due to failure to deliver pads C and D.

e. February 4, 2021 both Fritz and Defendant Harco receive notice of default and declaration of default under the Performance Bond. A copy of this notice is attached hereto as **Exhibit 4** and incorporated herein.

f. February 5, 2021 Harco acknowledged receipt of the declaration of default and directed Young to "do not take any steps to complete the project without the written consent of the Surety." A copy of this letter is attached hereto as **Exhibit 5** and incorporated herein.

g. February 11, 2021 Fritz and Harco are notified that "no grading activities have progressed this week".

h. February 16, 2021 Fritz and Harco are again notified (in response to a writing from Fritz) of the various and continuing defaults of Fritz. A copy of this notice is attached hereto as **Exhibit 6** and incorporated herein.

      i.      On February 18, 2021 the Owner of the Project notified Young of default for failure to have sitework completed.  The work referenced in the the Owner's letter is within the scope of work of the Fritz Subcontract.  A copy of this letter is attached hereto as **Exhibit 7** and incorporated herein.

      j.      On March 10, 2021 Fritz and the Harco were notified of four test pits that were dug in the pond on the QT site.  Failures where documented and notice thereof given to Fritz and Harco.

24.    As of February 22, 2021, the Harco had taken no action under the Performance Bond.

25.    On February 22, 2021, Young forwarded to Fritz and Harco a quote from Cummins Enterprises, Inc. (Cummins) to complete the work of Fritz.  This quote did not include performing work on an unclassified basis.

26.    On February 23, 2021 Fritz and the Harco received another notice of default and notice of the lack of any Fritz activity on site.  Further, Harco was notified of a Payment Bond claim for the failure of Fritz to pay one of its vendors who filed a lien.

27.    Harco did not provide any specific dispute or refutation of the February 23, 2021 notice above.

28. On February 24, 2021 Harco and Fritz were again notified of no Fritz work being performed on site. Harco was then asked to advise if it would honor its Performance Bond and Payment Bond obligations.

29. As of February 24, 2021 Harco had not offered performance or otherwise made any election under the Performance Bond.

30. On March 1, 2021 Young requested Harco advise of its plan to perform under the Performance Bond. However, Harco did not provide a performance plan or otherwise make an election under the bond as of March 1, 2021.

31. On March 5, 2021 Harco issued a letter to Young advising that it took no position regarding its obligations under the Performance Bond and reiterated its request for Young to continue to do no work and take no steps to complete Fritz' work. At this time, Fritz continued to have zero men on the job except for the purpose of removing equipment.

32. The failure of Fritz to continue contract performance during Harco's investigation and during the pendency of a dispute violates the Contract Documents.

33. As of March 10, 2021 neither Harco nor Fritz had offered to resume, repair and complete Fritz' work.

34. Even though Harco continued to take no position, on March 11, 2021 Young confirmed that Harco and its representatives would be granted free access to

the site to inspect and review all work provided they identified who was coming to the site and when. Thereafter, Young accommodated every request of Harco to inspect the Project.

35. By letter received April 2, 2021, Harco elected to proceed under Section 4.3 of the Performance Bond which provides that Harco is liable to pay Young the amount incurred over the Subcontract balance to repair and complete Fritz' work as soon as practicable. A copy of this letter is attached hereto as **Exhibit 8** and incorporated herein.

36. Harco tendered $395,341.89 without prejudice to any rights of Young to seek payment for the additional costs of performing Fritz's work in excess of this amount.

37. As of the date of this filing, Harco has not paid any additional monies.

38. Young contracting paid for Cummins to repair and complete the Fritz scope of work.

39. Young owes or paid Cummins and other vendors $2,750,371.49 over the Fritz Subcontract balance for the repair and performance of the Fritz' scope of work and for its efforts to cause Harco to honor its obligation to perform. After crediting the payment made by Harco, Young remains owed $2,355,029.60 from Harco.

40. Harco was provided updated damages accounting throughout the repair and completion of the Fritz scope of work.

41. At no time did Harco object to or suggest that amounts spent were unreasonable or not within the Fritz scope of work until after the Fritz scope of work was complete.

42. At no time did Harco object to Cummins repairing and completing the Fritz scope of work.

43. At no time did Harco assert or suggest that Cummins performance of the repair and completion work was incompetent or lacking in any way.

44. Young provided all back up documentation requested by Harco to support and verify the amount spent by Young to complete and repair the Fritz scope of work.

45. Under the Performance Bond, Harco is bound by the Subcontract including the obligation of indemnity thereunder.

46. Under the Performance Bond, Harco is bound by the Subcontract including the duty to timely perform.

47. Under the Performance Bond, Harco is bound by the Subcontract including the duty to pay Young all costs associated with the performance defaults of Fritz.

48. Young has given all notices and performed all acts required under the Performance Bond to perfect its right to now bring this claim and action.

49. This action is brought within two years of substantial completion and is timely filed under the Performance Bond.

## COUNT ONE
## BREACH OF THE PERFORMANCE BOND

50. The allegations set forth in paragraphs 1 through 49 of this Complaint are incorporated herein by reference as if fully set forth.

51. Fritz failed to timely and competently perform its work under the Subcontract.

52. Fritz failed to cure its performance failures after multiple notices of default.

53. Fritz quit working on the Project entirely in March of 2021.

54. Harco received a declaration of default and acknowledged receipt of the same on February 5, 2021.

55. Harco did not repair and complete the Fritz scope of work.

56. Harco did not obtain new contractors or seek bids from contractors to repair and perform the Fritz scope of work.

57. Harco has never denied liability to Young. To the contrary it paid Young some of the amounts it admits owing under paragraph 4.3 of the Performance Bond.

58. Harco has bound itself to perform the Subcontract obligations pursuant to the Performance Bond.

59. Harco breached the Performance Bond in at least the following ways:

    a. Failure to timely repair Fritz work;

    b. Failure to timely complete Fritz work;

    c. Failure to indemnify and hold Young harmless for all costs and damages sustained by Young as a result of Fritz' failure to timely and competently perform its work under the Subcontract;

    d. Failure to pay for all excess costs incurred by Young in the repair and completion of Fritz' scope of work.

60. Harco's breaches of the Performance Bond have directly and proximately caused Young to sustain monetary damages.

61. The damages sustained by Young were the direct and foreseeable result of Surety's breach of the Subcontract and Performance Bond.

62. Harco purported to elect to pay the amount for which it is liable under Section 4.3 of the Performance Bond but the amounts tendered by Surety are only a fraction of the amounts for which Harco is liable.

63. Failure of Harco to tender amounts for which it is liable is a breach of the Subcontract and the Performance Bond.

64. Young has sustained damages not less than $2,355,029.60 for which Harco is liable under the Subcontract and the Performance Bond.

65. Pursuant to the Subcontract and Performance Bond, Young is additionally entitled to recover markup and profit on amounts expended on the repair and completion of the Fritz work.

66. Pursuant to the Subcontract and Performance Bond, Young has and will sustain damages in the form of attorney fees and litigation costs for which Harco is and will remain liable.

67. Pursuant to the Subcontract and Performance Bond, Young is entitled to complete indemnity from and against all damages and claims, including claims from the Owner, directly or indirectly caused by the performance failures of the Principal under the Performance Bond. Surety is liable for such amounts including liquidated damages assessed by Owner.

WHEREFORE, Young respectfully requests that this Court:

(a) enter judgment against Surety in an amount of not less than $2,355,029.60 or such other amount as it may prove at trial along with all costs of this action;

(b) enter judgment against Surety for all accrued prejudgment interest;

(c) grant Young post-judgment interest at the highest rate allowed by law; and,

(d) grant Young such other relief as this Court deems just and appropriate under the circumstances.

Respectfully submitted, this 23rd day of November 2021.

> **HUDSON LAMBERT PARROTT WALKER, LLC**
>
> */s/ Dawn N. Pettigrew*
> Brad C. Parrott
> Georgia Bar No. 595999
> Dawn N. Pettigrew
> Georgia Bar No. 409509
> *Attorneys for Plaintiff*

3575 Piedmont Road NE
15 Piedmont Center, Suite 850
Atlanta, Georgia 30305
Telephone: 404-554-8181
Facsimile: 404-554-8171
Email: bparrott@hlpwlaw.com
        dpettigrew@hlpwlaw.com